La Jueza Asociada Señora Fiol Matta
emitió la opinión del Tribunal.
El confinado Jacinto López Borges tiene 47 años de edad. Los últimos 21 años de su vida ha estado encarcelado en una prisión de máxima seguridad por haber robado dos veces cuando tenía 19 años y otra vez cuando tenía 26 años, lo que conllevó que lo declararan reincidente habitual y, por consiguiente, lo sentenciaran a la separación permanente de la sociedad.![1]) Durante su tiempo en la cár-cel, recibió tratamiento para su adicción a sustancias con-troladas y se certificó que ya no necesita atención para esa enfermedad. Asimismo, estando en prisión, terminó su grado de cuarto año de escuela superior y completó los ta-lleres de crecimiento personal y las terapias psicológicas Aprendiendo a Vivir Sin Violencia. También está traba-jando en el área de Empaque de la institución, a pesar de que no recibe bonificaciones por ello. El señor López Borges no tiene querellas disciplinarias y, en su evaluación de re-clasificación de custodia, recibió una puntuación objetiva que le hubiese permitido permanecer en una cárcel de se-guridad mínima, por no haber presentado problemas de conducta en el sistema correccional.
Con este cuadro, el confinado era acreedor de una reduc-ción en su nivel de custodia. No obstante, el Departamento de Corrección decidió ratificar su nivel de custodia en máxima, basándose en una disposición derogada sobre reincidencia habitual del Código Penal de 1974 y violando lo establecido en la Ley de Mandato Constitucional de Re-habilitación de 2004. El Tribunal de Apelaciones revocó esa determinación porque no se puede negar una reclasifica-ción de custodia utilizando la categoría de reincidente ha *607 bitual como único fundamento. Confirmamos la decisión del foro apelativo.
I
La Ley de Mandato Constitucional de Rehabilitación, Ley Núm. 377-2004, declara como política pública del Gobierno de Puerto Rico la rehabilitación del delincuente.([2]) Dispone que la aspiración consignada en la Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado, al ordenar que las instituciones penales promuevan la rehabilitación moral y social de los delincuentes, constituye un mandato del Pueblo, a partir de la vigencia de esa ley.([3]) Este estatuto no hace distinciones en cuanto a cuáles confinados beneficia; siempre se refiere a “toda la población penal”.([4]) El historial legislativo de la medida demuestra que la catalogación de reincidente habitual nunca se consideró como una limitación para que un confinado se sirviese de todos los beneficios del sistema de rehabilitación, incluyendo la reclasificación de custodia.([5])
Así, el Artículo 3 de la Ley Núm. 377 ordena a la Administración de Corrección y a todos los organismos relacionados con el sistema correccional que implementen programas de rehabilitación “que impacten a toda la población sentenciada” y enumera exigencias específicas con las *608 que tienen que cumplir como parte de esa obligación.([6]) La primera de éstas consiste en la “[clasificación adecuada de la población correccional y revisión continua de esta clasificación conforme a los ajustes y cambios de la clientela”.([7])
II
La clasificación de los reclusos en distintos niveles de custodia es, según el Manual de Clasificación de Confinados de la Administración de Corrección del 2000 vigente, la médula de un sistema correccional eficaz. Esa clasificación consiste en “la separación sistemática y evolutiva de los confinados en subgrupos, en virtud de las necesidades de cada individuo ..., que continúa desde la fecha de ingreso del confinado hasta la fecha de su excarcelación”.([8]) Para ello, se hace una clasificación inicial y, luego, reclasificaciones periódicas. El propósito de la reclasificación es determinar cuán apropiada es la asignación de custodia de la persona en ese momento, según su proceso de adaptación y su plan de rehabilitación.([9])
La importancia de la reducción del nivel de custodia, como parte del proceso de rehabilitación, se refleja en la regla que enuncia constantemente el Manual de Clasifica-ción del 2000: se tiene que ubicar a cada confinado en el nivel de custodia menos restrictivo posible.([10]) Esto garan-tiza que personas con necesidades y rasgos de personalidad *609 parecidos tengan niveles de custodia similares([11]) y es lo que hace del sistema de clasificación uno funcional. ([12]) Con el propósito de que cada preso socialice con reos que se encuentren en su mismo nivel de readaptación moral y no se perjudique su progreso, el Manual ordena revisar la cla-sificación de todos los confinados asignados a custodia máxima cada 6 meses; las clasificaciones de mínima y me-diana se revisan anualmente.([13]) Así, mientras más restric-tivo es el nivel de seguridad asignado, con mayor frecuen-cia se hace la evaluación de reclasificación para deter-minar si la conducta del recluso amerita una reducción de custodia.
Además, el Manual reconoce que “[e]s importante que los confinados con sentencias prolongadas tengan la opor-tunidad de obtener niveles de custodia reducida”.([14]) Esa reducción está condicionada al cumplimiento del reo con los requisitos de su plan institucional, que va evolucio-nando durante el encarcelamiento de acuerdo con su apro-vechamiento del proceso de rehabilitación. Por eso, la eva-luación para reclasificación, aunque se parece a la evaluación inicial de custodia, “recalca aún más la con-ducta institucional como reflejo del comportamiento real del confinado durante su reclusión”.([15]) No sólo se le da más peso a la conducta que ha observado el recluso durante el confinamiento, sino que, incluso, no se considera la mala conducta dentro de la prisión que se haya dado mucho tiempo atrás, como son los motines y las fugas en periodos remotos. Es así porque, si sólo se evaluara la conducta por la que está presa la persona o se le diera mayor importan- *610 cia a las características de su sentencia, no tendría sentido alguno la revisión periódica del nivel de custodia, pues el resultado del análisis siempre sería el mismo.
El Formulario de Reclasificación de Custodia se utiliza “para actualizar y revisar la evaluación inicial de custodia”. ([16]) Mientras más alta es la puntuación en la es-cala, mayor es el nivel de custodia que necesita el confinado. En el caso del señor López Borges, la puntua-ción objetiva final fue de 1, que permite un nivel de custo-dia mínima. Para obtener este número, se tomó en cuenta la gravedad de los cargos y condenas actuales, que recibió 4 puntos.([17]) A eso se le restaron 2 puntos en consideración de la edad del confinado y 1 punto por su participación en programas desde la última clasificación. Los renglones que podrían haber aumentado el número final, para arrojar que se debía mantener la clasificación de máxima, recibie-ron puntuación de 0: historial de fuga en los últimos cinco años, condenas disciplinarias y condenas previas de delitos graves en los últimos cinco años.([18]) Esa evaluación mani-fiesta que, a pesar de que la clasificación de la conducta por la cual está cumpliendo el recluso es grave, la adapta-ción que ha demostrado en prisión lo hace acreedor de un nivel de custodia menos restrictivo que el inicial.
Por otro lado, el señor López Borges ha estado encarcelado desde el 1991. El Manual de Clasificación de Confinados establece que, independientemente de cualquier otra disposición de ese reglamento y de la puntuación final en la escala, a una persona que haya estado encarcelada continuamente desde antes de mayo de 1996 no se le aumentará el nivel de custodia, a menos que haya sido *611 encontrado culpable de violaciones disciplinarias o delitos después de esa fecha. La iónica excepción a esta regla res-ponde a casos extraordinarios en los que la conducta del confinado represente un peligro apremiante para la seguridad del personal, del público y de los demás confinados.([19]) Esta norma refleja la intención de no castigar con niveles de custodia altos a reclusos con sentencias prolongadas que mantengan buena conducta en la institución penal.
Si bien es cierto que la reducción del nivel de custodia no es el único fin de la reevaluación de custodia, cuando el análisis del expediente arroja que el confinado merece un nivel de custodia menor, no se puede negar la reducción utilizando el argumento de que la reevaluación hubiese po-dido resultar en medidas diferentes, como la participación en programas de adiestramiento o contra la adicción. Esto, menos aun cuando el confinado ya ha completado todos los programas y el próximo paso para su rehabilitación tiene que ser la reducción de custodia. De igual manera, el que el Manual haga la salvedad de que el proceso de reevaluación no siempre conlleva un cambio de custodia no significa que se puede ratificar la custodia actual aunque las circunstan-cias exijan lo contrario.([20])
En Cruz v. Administración advertimos que tomar en consideración únicamente un factor de la condena al momento de reclasificar al confinado, por ejemplo, la extensión de la sentencia, constituye un claro abuso de discreción por parte de Corrección.([21]) En el presente caso, la *612 modificación que se le hizo a la evaluación de reclasificación del señor López Borges consistió en anotar que era reincidente habitual. Entonces, su custodia se mantuvo en máxima automáticamente([22]) La clasificación de reinci-dente fue el único factor que se consideró para esta determinación. Se descartaron los demás elementos que se evalúan en la reclasificación, que responden al proceso de rehabilitación del recluso.
III
La determinación de la Administración de Corrección ignora el significado y el propósito del proceso de rehabilitación, que es el fin primordial de nuestro sistema correccional por mandato constitucional. La rehabilitación es un proceso largo y complejo que busca transformar la conducta y las actitudes de un ser humano. Como señala la declaración de política pública de la Ley Núm. 377, la rehabilitación “es el objetivo del ingreso en el sistema de supervisión y custodia; no una alternativa al mismo. La simple existencia de programas y proyectos de actividad y desarrollo educativo, social y cultural o vocacional no constituye la rehabilitación, sino herramientas dentro del proceso”/[23]) No se pueden confundir las oportunidades de recreación con el proceso, más abarcador y serio, de la rehabilitación moral y social.
El nivel de custodia máxima está reservado para los confinados que requieren un grado alto de control y supervisión. Por razones de seguridad, se les restringen las áreas en las que pueden moverse y las tareas que pue- *613 den realizar. Asimismo, se les ubica en celdas individuales y se les requiere utilizar esposas, cadenas y grillete en todo momento cuando salen del complejo correccional a recibir atención médica. Dadas las restricciones que necesita este tipo de población, los programas a los que pueden tener acceso son limitados. A través de los ajustes en la conducta que demuestran los confinados de custodia máxima, logran que se les reclasifique a custodia mediana. En el nivel de mediana, la supervisión es menor, porque los controles in-ternos de la persona le permiten convivir con otros reclusos de la misma clasificación. Los confinados de mediana se ubican en dormitorios y son elegibles para distintos tipos de labores y actividades que requieren supervisión de rutina. Por otro lado, en la clasificación de mínima, los reos pueden participar en programas de actividades y trabajo en la comunidad, con menos vigilancia.([24]) Esa evolución en cuanto al grado de supervisión y a las posibilidades de ser elegibles para programas que propendan a la rehabilitación se debe a que la persona tiene que acercarse cada vez más a lo que sería un ciudadano en la libre comunidad. En este caso, el señor López Borges, según la evaluación objetiva, está listo para la custodia mínima, pero, ya que ac-tualmente se encuentra en máxima, está solicitando que se le reduzca su custodia al próximo nivel, que es el de mediana. Entendemos que esa es la clasificación adecuada para sus circunstancias y su progreso con su plan institucional.
La determinación de custodia máxima en casos como el del señor López Borges se basa solamente en una disposi-ción del Código Penal derogado.!([25]) De hecho, donde único se menciona la reincidencia habitual en el Manual de Cla- *614 sificación de Confinados del 2000 es en la sección de Defi-niciones y sólo señala que el Código Penal de 1974, en su Artículo 62, “dispone que un convicto que ha sido declarado delincuente habitual será ingresado o trasladado a una institución de máxima seguridad”.([26]) Esta referencia a la norma que estaba vigente cuando se hizo el Manual, antes de la revisión integral de nuestro ordenamiento penal, que culminó en el 2004, no tiene el carácter de una prohibición absoluta, pues tiene que atemperarse a las enmiendas que ha sufrido la legislación en ese campo. En ese sentido, la ley especial posterior sobre el Mandato Constitucional de Rehabilitación permitió cruzar la barrera del Artículo 62 del Código Penal de 1974 y clasificar a todo confinado, in-cluyendo a quienes están en la categoría de reincidentes habituales, según les corresponda, de acuerdo con el cum-plimiento con su proceso de rehabilitación.
La Ley Núm. 377 no limita las posibilidades de los rein-cidentes habituales. Al contrario, reconoce que éstos, ade-más de ser parte de la población penal a la que está diri-gida la legislación, tienen necesidades específicas que no se han atendido en décadas anteriores. La Exposición de Mo-tivos de la Ley Núm. 377 indica que:
Ante el auge de la acción delictiva y la creciente manifesta-ción de conducta violenta en jóvenes y adultos, desde hace años se ha reclamado examinar la política pública y la acción del Gobierno en materia correccional. Estudios recientes, re-comendaciones de Comisiones Especiales, datos empíricos y el juicio de peritos en sociología y criminología han planteado la necesidad urgente de transformar la política correccional como componente fundamental de un sistema de justicia criminal que también ha fracasado estrepitosamente.
No puede soslayarse por más tiempo que las estrategias im-plantadas en Puerto Rico desde el 1974 hasta el presente, en lugar de prevenir o reprimir la comisión de delitos, parecen reproducir o fomentar la criminalidad. ...
(e) La reincidencia en la actividad delictiva de los egresados *615 de las instituciones carcelarias y de los programas comunita-rios vigentes indican el fracaso de la prisión como institución que busca la rehabilitación.
(f) Para prevenir [la] reincidencia es necesario ampliar los programas dirigidos a preparar al sentenciado para su rein-serción a la sociedad y hacerlos disponibles a toda la población penal. ([27])
Los reincidentes habituales son, en parte, el producto de ese sistema correccional fracasado que devolvió delincuen-tes a la sociedad sin haberlos rehabilitado. A pesar del re-conocimiento expreso de esa falla del sistema penal retri-butivo que hizo la Legislatura en el 2004, la Adminis-tración de Corrección continúa atendiendo solicitudes como la del señor López Borges a base de la política penal desarrollada hace más de tres décadas, que creíamos supe-rada con las leyes vigentes. Con ello, le impiden a ciertos miembros de la población penal beneficiarse de la nueva política de rehabilitación, porque no fueron rehabilitados al amparo del sistema anterior y reincidieron.
IV
Debido a que la Ley de Mandato Constitucional de Re-habilitación no excluye a los reincidentes habituales, pues está dirigida a toda la población penal, y a que la reducción de custodia es un elemento esencial en el proceso de reha-bilitación de aquellos confinados que la ameritan, se con-firma la Sentencia del Tribunal de Apelaciones y se ordena a la Administración de Corrección realizar una nueva eva-luación de reclasificación que no esté limitada por los artí-culos sobre reincidencia habitual del Código Penal de 1974.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión de conformidad. El Juez Asociado Señor Mar- *616 tínez Torres emitió una opinión disidente, a la cual se unieron la Jueza Asociada Señora Pabón Charneco y los Jueces Asociados Señores Rivera García y Feliberti Cintrón.
— O —

(1) El Artículo 62 del Código Penal de 1974, vigente cuando se sentenció al señor López Borges, disponía que los reincidentes habituales serían sentenciados a sepa-ración permanente de la sociedad y cumplirían toda su sentencia en una cárcel de seguridad máxima. 33 L.P.R.A. see. 3302 (ed. 2001). El Código Penal de 2004, en su Artículo 81, cambió la pena para reincidentes habituales a un término de 99 años y eliminó la disposición sobre el nivel de custodia en la prisión. 33 L.P.R.A. see. 4709(c).

(2) Art. 2 de la Ley de Mandato Constitucional de Rehabilitación, Ley Núm. 377-2004 (4 L.P.R.A. see. 1611).

(3) Exposición de Motivos de la Ley Núm. 377-2004 (2004 (Parte 2) Leyes de Puerto Rico 2549). La Exposición de Motivos cita, además, la discusión de la Con-vención Constituyente al aprobar esta disposición. En ésta se resalta que el fin último de la rehabilitación de los reclusos es garantizarle a la ciudadanía que las personas que salen de la cárcel han sido rehabilitadas, ya no son una amenaza a la seguridad de los demás y serán útiles a la sociedad en la que van a convivir.

(4) Exposición de Motivos, Art. 3, Art. 5 y Art. 6 de la Ley Núm. 377-2004, supra, pág. 2549.

(5) Véase Comisión de lo Jurídico del Senado, Informe sobre el Sustitutivo del P. del S. 1731 de 17 de marzo de 2004.

(6) (Énfasis suplido). Art. 3 de la Ley Núm. 377-2004 (4 L.P.R.A. see. 1611).

(7) (Énfasis suplido). Art. 3 de la Ley Núm. 377-2004 (4 L.P.R.A. sec. 1611(a)).

(8) (Énfasis suplido). Perspectiva General, Reglamento Núm. 6067 de la Admi-nistración de Corrección, Manual de Clasificación de Confinados de 2000 (Manual 2000), aprobado 23 de diciembre de 1999, pág. 1; Exposición de Política, Manual 2000, pág. 2; Clasificación, Manual 2000, Sección 2(II)(A)(2), pág. 11.

(9) Objetivos de la reclasificación de custodia, Manual 2000, Sección 7 (I y II), pág. 42.

(10) Perspectiva General, Manual 2000, pág. 1; Exposición de Política, Manual 2000, Sección 1(III)(A), pág. 2; Objetivos del sistema de clasificación, Manual 2000, Sección 2(II)(A)(2), pág. 11.

(11) Objetivos del sistema de clasificación, Manual 2000, Sección 2(II)(A)(1), pág. 11.

(12) Perspectiva General, Manual 2000, pág. 1.

(13) Definición de reclasificación, Manual 2000, Sección 1, pág. 8; Programa para la revisión de custodia, Manual 2000, Sección 2(V)(D), pág. 20; Tipos de reclasificación, Manual 2000, Sección 7(III)(B), pág. 39.

(14) Objetivos de la reclasificación de custodia, Manual 2000, Sección 7(11), pág. 43.

(15) (Énfasis suplido). íd.

(16) (Énfasis suplido). Objetivos de la reclasificación de custodia, Manual 2000, Sección 7(II)(42), pág. 42.

(17) Un confinado se clasifica en el nivel de máxima cuando tiene una puntua-ción mayor de 7 en este renglón.

(18) Escala de Clasificación de Custodia, Jacinto López Borges, 8 de diciembre de 2008, Apéndice de la Petición de certiorari, pág. 84.

(19) Disposición Especial para Confinados Encarcelados Continuamente antes de 1996, Manual 2000, Sección 6(V), pág. 42; Sección 7(V), pág. 48.

(20) Objetivos de la reclasificación de custodia, Manual 2000, Sección 7(11), pág. 42.

(21) Cruz v. Administración, 164 D.P.R. 341, 358-359 (2005). En ese caso, el confinado solicitaba que se redujera su nivel de custodia de máxima a mediana. El Tribunal confirmó la determinación administrativa de mantener la custodia en máxima porque la decisión respondió a diversos factores, que incluyeron la gravedad de los delitos cometidos, entre los que estaba asesinato en primer grado; la propor-cionalidad entre los 16 años de reclusión cumplidos y la sentencia de cuatro términos *612 consecutivos de 99 años de prisión, y que no había cumplido con su plan institucional, pues se ausentaba a sus clases y tenía una querella pendiente por posesión de una jeringuilla.

(22) Escala de Clasificación de Custodia, Jacinto López Borges, 8 de diciembre de 2008, Apéndice de la Petición de certiorari, pág. 85.

(23) Ar(;. 3 de Ley Núm. 377-2004, según enmendado por la Ley Núm. 165-2009, supra.

(24) Definición de Niveles de Custodia, Manual 2000, Sección 1, págs. 6-7. Véase, también, Apéndice de la Petición de certiorari, págs. 104-105.

(25) Ese fue el único fundamento que utilizó la Administración de Corrección cuando el señor López Borges pidió reconsideración de la determinación de mante-nerlo en custodia máxima. Véase Sentencia del Tribunal de Apelaciones, pág. 19, en Apéndice de la Petición de certiorari, pág. 21.

(26) Definición de Artículos sobre Reincidencia, Manual 2000, Sección 1, pág. 3.

(27) (Énfasis suplido). Exposición de Motivos de la Ley Núm. 377-2004, supra, págs. 2549-2550.